IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PLAINS ALL AMERICAN PIPELINE, L.P.,

Plaintiff;

v.

THOMAS COOK, in his capacity as the
Secretary of Finance for the State of Delaware;
DAVID M. GREGOR, in his capacity as the
State Escheator of the State of Delaware;
MICHELLE M. WHITAKER, in her capacity
as the Audit Manager for the State of
Delaware, and KELMAR ASSOCIATES,
LLC,

Defendants.

Civil Action No. 15-468-RGA

## MEMORANDUM OPINION

Bradford J. Sandler, Esq., Colin R. Robinson, Esq., Pachulski, Stang, Ziehl & Jones LLP, Wilmington, DE; Phillip B. Dye, Jr., Esq. (argued), Brock R. Skelley, Esq., Deborah C. Milner, Esq., Vinson & Elkins LLP, Houston, TX, attorneys for Plaintiff Plains All American Pipeline, L.P.

Jennifer R. Noel, Esq., Caroline Lee Cross, Esq., Edward K. Black, Esq., Delaware Department of Justice, Wilmington, DE; Steven S. Rosenthal, Esq. (argued), John D. Taliaferro, Esq., Marc S. Cohen, Esq., Loeb & Loeb LLP, Washington, D.C., attorneys for Defendants Thomas Cook, David M. Gregor, and Michelle M. Whitaker.

Marc J. Phillips, Esq., Jason A. Cincilla, Esq., Manion, Gaynor & Manning LLP, Wilmington, DE; Ryan P. McManus, Esq. (argued), Stephen W. Kidder, Esq., Hemenway & Barnes LLP, Boston, MA, attorneys for Defendant Kelmar Associates, LLC.

August 16, 2016

1

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are two motions to dismiss filed by Defendants. (D.I. 25, 29).

Mr. Cook, Mr. Gregor, and Ms. Whitaker (collectively "the Delaware Defendants") move

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Kelmar moves pursuant to Fed. R. Civ. P.

12(b)(1), 12(b)(6), and 12(b)(7). The issues have been fully briefed. (D.I. 26, 30, 33, 35, 36,

38). The Court heard oral argument. (D.I. 45). For the reasons stated herein, the Delaware

Defendants' motion to dismiss is **GRANTED**, and Kelmar's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

This dispute concerns the enforcement of Delaware's unclaimed property laws.

"Unclaimed" or "abandoned" property is property held, but not owned, by a business, where

there has been no contact with the owner for a "dormancy period." Del. Code Ann. tit. 12, §

1198. That person or organization is deemed the "holder" of the property, while the owner is

"any person . . . having the legal or equitable title to the property . . . ." *Id.* Every business

which holds unclaimed property must, each year, "file [a report] with the State Escheator,"

which must include certain information about the property and its possible owner. Del. Code

Ann. tit. 12, § 1199. The State Escheator of Delaware is authorized to conduct unclaimed

property examinations "to determine whether the person [or business] has complied with any

provisions" of the Delaware unclaimed property laws.[1] Del. Code Ann. tit. 12, § 1155(a). This

is commonly called an "audit" and is conducted by an "Audit Manager." In situations where

business records "are insufficient to permit the preparation of the report, the State Escheator may

require the holder [of unclaimed property] to report and pay to the State the amount . . . that the

State Escheator reasonably estimates to be due . . . ." Del. Code Ann. tit. 12, § 1155(b).

---

[1] "The State Escheator may [also] contract with a person to conduct an examination in accordance with
this chapter . . . ." Del. Code Ann. tit. 12, § 1155(b).

If the Audit Manager "determines that a holder has underreported abandoned or

unclaimed property" which it owes, the Audit Manager must inform the holder, who then has

sixty days to file "a written protest" with the Audit Manager, identifying "the specific grounds

upon which the protest is based." Del. Code Ann. tit. 12, § 1156(a)-(b). While the Audit

Manager only considers the issues set out in the protest, "[t]he holder may submit additional

documentation and written submissions . . . in support of the protest." Del. Code Ann. tit. 12, §

1156(c)-(d). If the Audit Manager makes an adverse determination, the holder may appeal that

determination to the Secretary of Finance. Del. Code Ann. tit. 12, § 1156(f)-(g). The Secretary

of Finance "shall . . . appoint a person . . . to act as an independent reviewer to consider the

appeal of the Audit Manager's findings" under a *de novo* standard. Del. Code Ann. tit. 12, §

1156(g)-(h).[2] After the independent reviewer's determination is made, "[e]ither the holder or the

Secretary of Finance may . . . appeal [that] determination to the Court of Chancery." Del. Code

Ann. tit. 12, § 1156(j). That review "shall be limited to whether the independent reviewer's

determination was supported by substantial evidence on the record." *Id.*

On October 22, 2014, the Delaware Defendants informed Plaintiff that Delaware "would

be conducting an examination of [Plaintiff's] 'books and records,' and the 'books and records' of

[Plaintiff's] 'Subsidiaries and Related Entities.'" (D.I. 21 ¶ 53). In late November, the third-

party auditor, Kelmar, delivered to plaintiff an examination guide, a copy of its Confidentiality &

Non-Disclosure Agreement, and its initial document requests. (*Id.* ¶¶ 56-58). Plaintiff refused to

submit to the audit, and communicated a number of objections to both Kelmar and Ms. Whitaker,

the Audit Manager. (*Id.* ¶¶ 59-66, 70-73). These objections included Kelmar "having a financial

---

[2] The independent reviewer cannot be "currently employed by the Department of Finance" and must "be a former member of the Delaware judiciary, an individual who has been previously appointed and served as a master of any Delaware court, or an attorney licensed in the State who is qualified by experience or training to serve." Del. Code Ann. tit. 12, § 1156(g).

stake in the Audit's outcome," "Kelmar's insistence on a multistate audit in which it is given

authorization to share [Plaintiff's] confidential information with other states," "the breadth and

rational[e] of Kelmar's initial document requests," and "Kelmar's use of 'estimation.'" (*Id.* ¶

60). Ms. Whitaker, in her March 30, 2015 response, stated that Delaware would "not agree to a

bar on the use of estimation techniques" and refused Plaintiff's request that Delaware sign a

confidentiality agreement. (*Id.* ¶¶ 70-71). At the conclusion of her letter, Ms. Whitaker

"directed [Plaintiff] to fully cooperate with Kelmar, produce the records requested, and schedule

an opening conference." (*Id.* ¶ 73).

Plaintiff, on June 5, 2015, filed this action. (D.I. 1). On August 17, 2015, Plaintiff filed

the Amended Complaint, alleging violations of the Fourth Amendment, substantive due process,

procedural due process, the void for vagueness doctrine, the Ex Post Facto Clause, the Takings

Clause, and the Equal Protection Clause. (D.I. 21). Plaintiff also asserts conspiracy and

preemption claims. (*Id.*). Plaintiff seeks declaratory relief, injunctive relief, and attorneys' fees.

(*Id.*). On September 4, 2015, Kelmar and the Delaware Defendants moved to dismiss. (D.I. 21,

25, 29).

It should be noted that, while these motions to dismiss were pending, this Court issued an

opinion relevant to some of the issues raised by Plaintiff's Amended Complaint. *See Temple-

Inland, Inc. v. Cook*, 2016 WL 3536710 (D. Del. June 28, 2016) (Sleet, J.). In that case,

Delaware assessed liability on the plaintiff through the use of estimation. *Id.* at \*6. The liability

assessed to the plaintiff was reduced by the Audit Manager, and further reduced by the

independent reviewer. *Id.* Instead of filing an appeal with the Court of Chancery, as

contemplated by the statute, the plaintiff filed an action in district court, challenging the

constitutionality of the audit. *Id.* At summary judgment, the court concluded that Delaware's

audit had violated substantive due process. *Id.* at \*8, \*16. The court, however, "defer[red] its decision on the subject of an appropriate remedy until another day." *Id.* at \*17.

## II.   LEGAL STANDARD

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the complaint's factual allegations as true, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). There must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quotation marks omitted)).

Ripeness challenges, *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001), and motions to dismiss for lack of standing, *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014), are properly brought pursuant to Rule 12(b)(1). There are two ways a party may attack a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Constitution Pty.*, 757 F.3d at 357-58. "A challenge to a complaint for failure to allege subject matter jurisdiction is known as a 'facial' challenge, and

5

must not be confused with a 'factual' challenge contending that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges . . . ." *NE Hub*, 239 F.3d at 341 n.7. In reviewing a facial challenge under Rule 12(b)(1), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 341. "[T]he court must only consider the allegations of the complaint and documents referenced therein and attached thereto . . . ." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

## III.   ANALYSIS

Since Defendants have not answered the complaint, the challenges to subject matter jurisdiction are facial. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92, 892 n.17 (3d Cir. 1977). With respect to Kelmar, I find the issue of standing to be dispositive. As to the Delaware Defendants, only Plaintiff's equal protection claim is ripe. I conclude, however, that Plaintiff has failed to state a claim under the Equal Protection Clause.

### A.   **Standing to Sue Kelmar**

Standing to sue is a threshold requirement in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). To establish standing, "the party asserting jurisdiction must demonstrate (1) an 'injury in fact,' (2) that the injury is 'fairly traceable' to the action or actions complained of, and (3) that the injury will likely be redressed by a favorable decision." *Duquesne Light Co. v. EPA*, 166 F.3d 609, 612 (3d Cir. 1999) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An "injury in fact" is an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,

6

not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560 (citations and internal quotations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "The causation requirement is only satisfied where the injury is 'fairly traceable to the challenged action of the defendant . . . .'" *Duquesne*, 166 F.3d at 613 (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). To establish redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

In *Young America Corp. v. Affiliated Computer Services (ACS), Inc.*, 424 F.3d 840 (8th Cir. 2005), the Eighth Circuit confronted a situation similar to this one. There, forty-one states authorized ACS to audit Young America's records. *Id.* at 842. Each state informed Young America, by letter, that ACS had been authorized to perform the audit. *Id.* Six states "advised Young America that state law provide[d] for assessments, including interest, penalties, fines, and examination costs, for failing to perform certain duties under the statute, or for failing to report or deliver property within the prescribed time." *Id.* "Young America refused to submit to an audit and filed [suit] against ACS and [an ACS-affiliated individual], seeking declaratory and injunctive relief." *Id.* ACS moved to dismiss for lack of standing. *Id.*

The Eighth Circuit concluded that Young America had failed to allege injury in fact. *Id.* at 844. The court noted that the audit demand "letters simply authorize[d] an audit," rather than "threaten[ing] enforcement action if Young America refuse[d] to submit." *Id.* Even if the letters had threatened enforcement action, the complaint did not allege that "ACS itself ha[d] attempted or intend[ed] to attempt to seek enforcement of its audit demand." *Id.* In fact, "ACS ha[d] neither issued any subpoenas to compel the production of records nor sought judicial enforcement of its audit demand." *Id.* Further, there was no "indication [that] ACS ha[d] the

authority" "to litigate on the states' behalf." *Id.* Therefore, the court concluded, Young America had failed to adequately allege injury. *Id.*

The present case is indistinguishable from *Young America*. Kelmar has made no attempt to seek judicial enforcement of any examination. Kelmar has neither issued any subpoenas, nor sought judicial enforcement of its audit demand. Kelmar does not appear to have any authority to litigate on any state's behalf. "Without any indication [Kelmar] has the authority to force [Plaintiff] to submit to an audit, [Plaintiff's] alleged threat of enforcement is insufficient to establish an injury in fact." *Id.*

As in *Young America*, Plaintiff has also failed to establish causation. "Even if [a] state[] [could] penalize [Plaintiff] for failing to submit to an audit, [Plaintiff] [has] failed to allege [Kelmar] has the authority to litigate on [any] states' behalf." *Id.* In other words, even if Plaintiff could show some actual or threatened injury, there is no indication that such injury would be fairly traceable to Kelmar.

Lastly, Plaintiff has not established redressability. In *Young America*, the court concluded that "it [was] speculative, at best, whether a judgment in th[at] case would bind the states, because there [was] no indication ACS ha[d] authority to represent and bind the states in th[e] action." *Id.* at 845. Here, Plaintiff "does not contend that states other than Delaware would be bound by a judgment in this case." (D.I. 35 at 14). Further, Plaintiff has not explained how a judgment against Kelmar—rather than one against the Delaware Defendants—would redress its proposed injury.

Therefore, Plaintiff has failed to satisfy any of the standing requirements. The claims against Kelmar are therefore dismissed for lack of standing.

**B.      Ripeness of Declaratory Relief Against the Delaware Defendants**

"Ripeness is a separate doctrine from standing, but both doctrines originate from the same Article III requirement of a case or controversy." *Free Speech Coalition, Inc. v. Attorney Gen. U.S.*, —F.3d—, 2016 WL 3191474, at *11 n.15 (3d Cir. June 8, 2016). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Since declaratory judgments are "'typically sought before a completed injury has occurred,'" courts "apply a somewhat 'refined' test" to determine ripeness in the declaratory judgment context. *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Pic-A-State Pa. Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996)). In the Third Circuit, courts analyze three factors: "first, the adversity of the parties' interests; second, the probable conclusiveness of a judgment; third, the practical utility to the parties of rendering a judgment." *NE Hub*, 239 F.3d at 342. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

*i. Adversity*

"For there to be an actual controversy the defendant must be so situated that the parties have adverse legal interests." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 648 (3d

9

Cir. 1990) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2757 (2d ed. 1983)). "[I]t is necessary that there be a substantial threat of real harm and that the threat 'must remain real and immediate throughout the course of the litigation.'" *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (internal quotation marks omitted) (quoting *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990)). "Courts have found insufficient adversity for ripeness where the chance of the defendant acting against plaintiff is but a 'contingency.'" *NE Hub*, 239 F.3d at 343.

Plaintiff's claims are, at their core, premised on contingencies. The Delaware Defendants have not determined whether Plaintiff will be assessed any liability. In fact, the audit process— which may be followed by several stages of review—has hardly begun. Plaintiff's claims, aside from those pertaining to equal protection and the Fourth Amendment, are directed to ways in which the audit process may be undertaken and what the ultimate result of that process may be. Thus, the claims here are distinguishable from those at issue in *NE Hub*. There, "the process itself [was] the alleged harm." *NE Hub*, 239 F.3d at 343. The plaintiff argued that the federal Natural Gas Act preempted a state permit process. *Id.* at 339. Since the state Environmental Hearing Board sought to continue its permit process, and "preemption [would] operate to spare [the plaintiff] from that very process," the Third Circuit concluded that the plaintiff's interests were sufficiently adverse to the Board's. *Id.* at 342. Here, by contrast, Plaintiff's claims are directed to the particular ways in which the audit may be conducted. For instance, Plaintiff's preemption claim is based on a theory that the estimation procedures the Delaware Defendants will use violate the priority rules set forth in *Texas v. New Jersey*, 379 U.S. 674, 680-82 (1965). *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 392 (3d Cir. 2012). Plaintiff's claims pertaining to the Takings Clause, the Ex Post Facto Clause, vagueness, substantive due

process, and procedural due process similarly focus, in large part, on estimation. It is entirely

speculative whether the Delaware Defendants will use estimation in this particular audit.[3] To the

extent that Plaintiff's claims do not relate to estimation, they relate to procedural details of the

audit process. (*See, e.g.*, D.I. 21 ¶¶ 113-17). These are not challenges to the audit process itself.

In short, Plaintiff does not challenge the undertaking of the investigation, but particular aspects

of that investigation.

As for Plaintiff's Fourth Amendment claim, other Courts of Appeals have concluded that

in cases "'[w]here an agency must resort to judicial enforcement of its subpoenas, courts

generally dismiss anticipatory actions filed by parties challenging such subpoenas as not being

ripe for review because of the availability of an adequate remedy at law if, and when, the agency

files an enforcement action.'" *Mobil Expl. & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d

1192, 1200 (10th Cir. 1999) (quoting *In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990)). Here, the

Delaware Defendants have yet to seek enforcement of their document request.[4] If Plaintiff

wishes to "challenge the enforceability of [a future] . . . subpoena," it should "refuse[] to comply

---

[3] Plaintiff repeatedly references a letter written by the Audit Manager, Michelle Whitaker. (*See* D.I. 42, Ex. A). This letter, Plaintiff argues, indicates that the Delaware Defendants will use estimation in the event that Plaintiff fails to cooperate. In the letter, after responding to the objections raised by Plaintiff, Ms. Whitaker directed Plaintiff to "fully cooperate with Kelmar, produce the records requested, and schedule an opening conference." (*Id.* at p. 3). Additionally, Ms. Whitaker stated that Plaintiff should "note that the State will consider the level of [Plaintiff's] cooperation when determining whether penalties should be assessed, or whether any other statutorily available actions should be taken, in connection with any past-due unclaimed property that is identified as a result of the examination." (*Id.*). This clearly does not refer to estimation. First, the only statutorily authorized penalties are found in Del. Code Ann. tit. 12, § 1159. Second, and relatedly, Delaware does not treat estimation as a penalty, but as an "amount of abandoned or unclaimed property that should have been but was not reported that the State Escheator reasonably estimates to be due . . . ." Del. Code Ann. tit. 12, § 1155(a). Third, the letter refers to "statutorily available actions . . . in connection with" property which is "identified," rather than estimated. Therefore, this letter does not suffice to show an immediate threat of real harm.
[4] My understanding is that there is litigation pending in a different audit that might soon offer an opportunity for a state court opinion on issues relating to enforceability. (D.I. 47 at 2).

with the subpoena and await[] any enforcement action." *Ramirez*, 905 F.2d at 99.  Until then, there is no adversity.

Plaintiff's equal protection claim is different, since it has little—if anything—to do with the actual audit process.  Plaintiff premises its equal protection claim on the Delaware Defendants' having targeted Plaintiff and other wealthy entities.  (D.I. 21 ¶¶ 148-50).  For purposes of this claim, once the targeting has taken place, the supposed unlawful conduct is complete.  By simply initiating the process, the parties became adverse.

Plaintiff's claims, aside from equal protection, are directed to conduct which the Delaware Defendants may or may not undertake, which may or may not result in harms to Plaintiff at some later point in time.  Far from a "real and immediate" threat, Plaintiff's claimed harms are tenuous and uncertain.

*ii. Conclusiveness*

"Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." *NE Hub*, 239 F.3d at 344.  "Any contest must be based on a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Step-Saver*, 912 F.2d at 649 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)).  "[T]he need for a concrete set of facts is greater in some instances than others." *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992).  For instance, "an 'actual factual setting' is 'particularly important in cases raising allegations of an unconstitutional taking of private property.'" *Id.* (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 294-95 (1981)).  "On the other hand, . . . [it] is not as important where the question presented is 'predominantly legal,' such as one of federal

preemption." *Id.* (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)).

This is a dispute where an "actual factual setting" is particularly important. Plaintiff raises substantive due process and takings challenges. In analyzing substantive due process challenges to estimation procedures, "[c]ourts have routinely upheld the government's use of statistical sampling as a valid audit tool provided it was properly performed." *Temple-Inland*, 2016 WL 3536710, at \*15 (collecting cases). "An estimation is properly performed when it is based on the principle that the unclaimed property in the reach-back years has 'all the same qualities and characteristics' as unclaimed property in the base-years." *Id.* (quoting *United States v. Mehta*, 594 F.3d 277, 283 (4th Cir. 2010)). As the detailed analysis in *Temple-Inland* illustrates, the determination of whether the use of estimation—if employed—violates substantive due process is an inquiry which would benefit greatly from a robust factual record.

Plaintiff's takings claim presents a similar problem. "Estimation is properly employed when it balances the competing interests between an unlawful taking by the state and improper windfall for holders." *Temple-Inland*, 2016 WL 3536710, at \*17. "[A] reasonable estimation . . . . is not an unconstitutional taking." *Id.* (citing *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307 (1989)). Whether the estimation that might be employed in this audit would be reasonable, as is required by § 1155, is an issue that requires a factual record. Indeed, the Supreme Court has recognized that an "actual factual setting" is "particularly important in cases raising allegations of an unconstitutional taking of private property." *Hodel*, 452 U.S. at 294-95.

The questions presented here are not "predominantly legal," such that "the need for complete factual development is not absolutely essential." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995). Plaintiff's claims pertaining to the Takings Clause, the Ex Post Facto

Clause, preemption, vagueness, and—to a large extent—substantive due process and procedural

due process, all focus on the practice of "estimation" authorized by § 1155(a). Since the

Delaware Defendants have not yet employed estimation to assess any liability, nothing is known

about the estimation procedure which may be undertaken. This presents significant practical

problems, since the permissibility of estimation, in all of these contexts, hinges on factual

specifics. Even Plaintiff's preemption claim is directed to a particular method of estimation,

which, if employed, might violate the principles set forth in the *Texas* cases.

In opposition, Plaintiff argues that it has raised facial challenges, which require less

factual development. "[F]acial challenges are disfavored and should be considered sparingly."

*CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 624 (3d Cir. 2013). "In a facial

challenge, the plaintiff does not seek to establish that the law cannot be applied to him; rather, he

or she must show that 'no set of circumstances exists under which the [challenged] Act would be

valid.'" *Id.* at 623 (alteration in original) (quoting *United States v. Mitchell*, 652 F.3d 387, 405

(3d Cir. 2011) (en banc)). Pleading facial challenges[5] cannot save Plaintiff's claims. A facial

challenge is not a free ticket to federal court. The presence of an actual case or controversy is a

prerequisite to every action, from which no plaintiff is exempt. *Armstrong*, 961 F.2d at 421.

Plaintiff describes speculative harms flowing from events which may not transpire. Plaintiff's

facial challenges do not "make[] up for the contingent nature of the[] complaint." *Id.* at 422.

---

[5] Plaintiff purports to raise both facial and as-applied challenges. Generally, Plaintiff's allegations relate to the particulars of its past and prospective interactions with the Delaware Defendants. (*See, e.g.*, D.I. 21 ¶¶ 102-05, 109-12). Further, most of Plaintiff's requests for relief demonstrate that Plaintiff "seeks to vindicate . . . [its] own rights," rather than "those of others who may also be adversely impacted . . . ." *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999). For purposes of this motion, however, I will assume that Plaintiff has adequately raised facial challenges to the use of estimation on grounds of vagueness, procedural due process, and preemption. (D.I. 21 ¶¶ 117-18, 123-24, 138).

14

Again, Plaintiff's equal protection claim is different. The conduct to which Plaintiff objects has already occurred. Future actions undertaken by the Delaware Defendants will have no impact on Plaintiff's equal protection claim. Thus, no further factual development would be helpful.

In short, nothing has happened. Whatever does eventually happen will not happen imminently. If and when it does happen, it is unknown how it will happen. This is particularly problematic since, for these claims, an actual factual setting is crucial. Any decision rendered by the Court would thus be based on some hypothetical set of facts, and would therefore constitute an impermissible advisory opinion.

*iii. Practical Utility*

"Practical utility goes to 'whether the parties' plans of actions are likely to be affected by a declaratory judgment,' and considers the hardship to the parties of withholding judgment." *NE Hub*, 239 F.3d at 344-45 (citations omitted) (quoting *Step-Saver*, 912 F.2d at 649 n.9). "One of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo . . ., and a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'" *Step-Saver*, 912 F.2d at 649 (alteration in original) (quoting Edwin Borchard, *Declaratory Judgments* 29 (1941)).

Plaintiff argues that, absent judicial intervention, it will be compelled to undergo a long and expensive audit process. Ordinarily, "the burden of participating in further administrative and judicial proceedings . . . do[es] not constitute sufficient hardship for the purposes of ripeness." *Fla. Power & Light Co. v. EPA*, 145 F.3d 1414, 1421 (D.C. Cir. 1998). Indeed, "in all but the most complex and burdensome cases where the administrative process itself is at issue, administrative expenses do not constitute a hardship to support ripeness." *Kushi v.*

*Romberger*, 543 F. App'x 197, 201 (3d Cir. 2013) (citing *NE Hub*, 239 F.3d at 345-46). The

Supreme Court has held that "the expense and annoyance of litigation is 'part of the social

burden of living under government.'" *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244

(1980) (quoting *Petroleum Expl., Inc. v. Pub. Serv. Comm'n*, 304 U.S. 209, 222 (1938)). "There

is no basis for treating the expense and annoyance of administrative audits and investigations any

differently." *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 70 (3d Cir. 2003).

Therefore, withholding judgment will not present the sort of hardship contemplated by this

factor.

Additionally, Plaintiff does not raise a constitutional challenge to the Delaware

Defendants' authority to undertake an audit. Rather, Plaintiff challenges certain aspects of an

audit which has yet to occur, including a possible method of assessing liability. Therefore, any

opinion would simply offer general pronouncements about what may or may not be

constitutional under some hypothetical sets of facts. In other words, the fact that "any . . .

opinion would not be grounded in facts arising from a dispute between parties renders the

'practical utility' even more remote." *Constitution Pty. of, Pa. v. Cortes*, 712 F. Supp. 2d 387,

400 (E.D. Pa. 2010), *aff'd*, 433 F. App'x 89 (2011).

Plaintiff's equal protection claim, as contrasted with its other claims, is based entirely on

the Delaware Defendants' targeting of Plaintiff. Since the Delaware Defendants have already

selected Plaintiff for an audit, there is some practical utility in assessing whether that targeting

deprived Plaintiff of its constitutional rights.

To summarize, Plaintiff seeks a declaration that actions the state has yet to undertake—

which it may never undertake—will, if done in a certain way, deprive Plaintiff of its

16

constitutional rights. Having considered the three *Step-Saver* factors, I conclude that, aside from the equal protection claim, Plaintiff has not demonstrated a ripe controversy.

## C.   Equal Protection

No state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "As a general matter, economic and social legislation is subject to rational basis review, under which a law need only be 'rationally related to a legitimate state interest.'" *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (footnote omitted) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam)). When legislation creates "a classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," *Dukes*, 427 U.S. at 303, however, "it is subject to strict scrutiny and will pass constitutional muster only if it is narrowly tailored to serve a compelling state interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998).

Plaintiff argues that the Delaware Defendants have violated the Equal Protection Clause by focusing auditing efforts on large, wealthy companies.[6] The wealthy are not a suspect class. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28-29 (1973). Therefore, rational basis review applies. Plaintiff contends that there is no legitimate justification for targeting the wealthy. Further, Plaintiff insists that the Delaware Defendants target such individuals to raise revenue for Delaware's general fund. Raising revenue "is not a legitimate interest," but "as long as [raising revenue] was not the only legitimate purpose underlying the legislation, [the legislation] will pass rational basis examination." *N.J. Retail Merchs.*, 669 F.3d at 398. Here, it

---

[6] Since § 1155(a) provides no criteria for the audit selection process, Plaintiff bases its § 1983 claim on a practice of constitutional violations undertaken by the Delaware Defendants.

is entirely legitimate for an agency with limited resources to target entities which are more likely than others to hold large amounts of unclaimed property. The actions of the Delaware Defendants are rationally related to that interest. Thus, the audit selection process satisfies rational basis review.

Count VIII is therefore dismissed for failure to state a claim.

## IV.    CONCLUSION

For the reasons set forth above, Kelmar's motion to dismiss (D.I. 25) is **GRANTED**, and the Delaware Defendants' motion to dismiss (D.I. 29) is **GRANTED**. An appropriate order will be entered.